IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANNY LEE TURNER, II                                                                  PLAINTIFF

V.                                    NO. 14-3048

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Danny Lee Turner, II, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his application for SSI on July 20, 2011, alleging an inability to work since October 15, 2009, due to bi-polar disorder, schizophrenia, depression, diabetes, back injury, anxiety, and mood control issues. (Tr. 134-141, 179, 160). For SSI purposes, the relevant time period begins the date the application is filed. Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. § 416.203(b). Accordingly, the relevant time period in this case is from July 20, 2011 to March 27, 2013, the date of the ALJ's decision. An administrative hearing was held on August 8, 2012, at which Plaintiff appeared with counsel, and he and his wife testified. (Tr. 25-73).

By written decision dated March 27, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - diabetes mellitus, obesity, and mood disorder. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) except that the claimant is limited to performing work where interpersonal contact is routine but superficial, complexity of tasks is learned by experience, tasks have several variables and require judgment within limits, and supervision required is little for routine while detailed for non-routine tasks.

(Tr. 15-16). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be able to perform his past relevant work as a wire worker. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 10, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) Whether there is substantial evidence to support the ALJ's decision that Plaintiff is not disabled; and 2) Whether the ALJ erred in failing to assign proper weight to the opinion of Plaintiff's treating physician, Dr. Charles Horton. (Doc. 11).

#### A. Relevant Time Period:

As stated earlier, SSI benefits are not payable for a period prior to application, and Plaintiff's application was filed on July 20, 2011. Cruse, 867 F.2d at 1185. Accordingly, the relevant time period begins on July 20, 2011. Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)(holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements). The Court has reviewed and considered all of the records contained in the transcript.

#### B. RFC Determination and Weight Given to Dr. Horton's Opinion:

-4-

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In this case, the records reveal that Plaintiff first saw Dr. Horton on April 25, 2007, for headaches (Tr. 458), and Dr. Horton wanted to get x-rays of Plaintiff's spine. Said x-rays were obtained, and no acute changes were seen in the cervical spine except there was a loss of alignment, compatible with muscle spasm. (Tr. 247). The thoracic spine x-rays were negative as visualized and there were no acute changes seen in the lumbar spine. (Tr. 247). On May 16, 2007, Dr. Horton reported that Plaintiff was doing much better as far as the back pain was concerned and the medicine seemed to help him. (Tr. 462).

On November 7, 2008, Plaintiff was assessed with ulnar neuropathy of his right forearm and lipoma of the right forearm. (Tr. 471). Plaintiff also suffered with headaches in 2008. (Tr. 261, 266, 466, 475). On April 25, 2010, Plaintiff presented to Dr. Horton for a physical for his

insurance, and had no complaints. (Tr. 480). Dr. Horton assessed Plaintiff with migraines, hyperlipidemia, sleep apnea, chronic low back pain, and hyperglycemia. (Tr. 481). Dr. Horton noted that Midrin seemed to work well for his headaches, and put Plaintiff on Flexeril as needed for muscle spasms when they occurred in his back. (Tr. 482). Plaintiff followed up with Dr. Horton on May 10, 2010, and Dr. Horton noted that he thought the Topamax had helped his headaches, and that his symptoms of his back were "under control with the present dose of Flexeril that he is on." (Tr. 486).

On June 9, 2010, Plaintiff reported to Dr. Horton that he was having mood swings and anger episodes. (Tr. 490). Dr. Horton believed Plaintiff had some sort of atypical depression, and started Plaintiff on Prozac. (Tr. 491). When he was seen by Dr. Horton on June 28, 2010, Plaintiff advised Dr. Horton he was feeling better on Prozac and had more energy, and had less problems with mood swings. (Tr. 494). Dr. Horton increased the dosage of Prozac and also started him on Metformin. (Tr. 496). By December 8, 2010, Plaintiff was again having more difficulties with mood swings, and asked for a referral to psychiatric services. (Tr. 313). On January 24, 2011, Plaintiff reported to Dr. Horton that his mood swings were much improved on Celexa and Marinol. (Tr. 317). On April 28, 2011, Plaintiff reported to Dr. Horton that he was doing a lot better on the medicines but did get almost "zoned out" or like a zombie when he took the Marinol. (Tr. 332). On May 17, 2011, Plaintiff saw Dr. Rene Charles Duffourc for Behavioral Health intake evaluation. (Tr. 293). During the evaluation, Plaintiff acknowledged that he was not compliant in taking his medication. (Tr. 294). He was then taking Marinol and Tranxene prescribed by Dr. Horton. (Tr. 294). Plaintiff was assessed as follows:

        Axis I:           Bipolar Disorder
        Axis II:        Deferred

        Axis III:      Diabetes
        Axis IV:      Economic problems and problems with primary support group
        Axis V:       51-60 moderate symptoms

( Tr. 295). On June 30, 2011, Plaintiff again saw Dr. Duffourc and reported a big improvement in his anger after switching to Lamictal. (Tr. 300).

Thereafter, beginning on July 20, 2011, the date the relevant time period begins, Plaintiff was seen by Dr. John Nash, who noted Plaintiff's blood sugar problem. (Tr. 340). Dr. Nash noted that Plaintiff "always eats a lot." (Tr. 340). He diagnosed Plaintiff with diabetes without complication type II, uncontrolled, phimosis, and advised Plaintiff to cut back on the volume to food. "He eats too much." (Tr. 342).

On September 7, 2011, non-examining consultant, Dr. Jonathan Norcross, completed a Physical RFC Assessment. (Tr. 351-358). He found that Plaintiff would be able to perform medium level work, but should avoid even moderate exposure to hazards. (Tr. 352, 355).

On September 7, 2011, non-examining consultant, Jon Etienne Mourot, Ph.D., completed a Mental RFC Assessment. (Tr. 362-364). Dr. Mourot found that Plaintiff was able to perform work where interpersonal contact was routine but superficial; complexity of tasks was learned by experience; tasks had several variables and required judgment within limits; and supervision required was little for routine, but detailed for non-routine, tasks. (Tr. 364). Dr. Mourot also completed a Psychiatric Review Technique form, finding Plaintiff had moderate degree of limitations in maintaining social functioning and mild degree of limitation in activities of daily living, and in maintaining concentration, persistence, or pace, and had no episodes of decompensation, each of extended duration. (Tr. 376).

Plaintiff saw Dr. Horton on October 10, 2011, needing something for muscle relaxation

for his chronic low back pain. (Tr. 422). Dr. Horton noted that he had been relatively stable on the recent medications of Lamictal and Klonopin. He also noted that Plaintiff's blood sugar at times got high, but Plaintiff did not check it very often. (Tr. 422). Plaintiff again saw Dr. Horton on December 8, 2011, after slipping and falling on some ice. (Tr. 542). Plaintiff complained of pain in his right knee and hip and tightness in his back. (Tr. 542). He was able to walk without any problem, and did not have any bruising or significant swelling, and there was no palpable injury or tenderness to the patella itself. Plaintiff also had good range of motion of his right knee and hip. (Tr. 544). Dr. Horton continued:

> As far as his other problems are concerned, he was doing okay on the Klonopin and the Lamictal and I refilled those. I think the Klonopin helped with his back pain more as well and I think it would be wise of him to get back on those medicines. They helped his attitude and helped his mood swings and his insurance will be changing here next month, so hopefully he is going to get back in to see the psychiatrist or where he can get in and be seen again and get those medicines done regularly.

(Tr. 544).

On March 28, 2012, Plaintiff complained to Dr. Horton of shoulder pain on his left side. (Tr. 557). Dr. Horton reported that he had a fairly good range of motion, but when he tried to abduct, it hurt. Plaintiff was reported as stable on his present psychiatric medications. (Tr. 558). Dr. Horton injected his shoulder with Lidocaine, and Plaintiff had a normal range of motion, active and passive, after the injection. (Tr. 560).

At the hearing held on August 8, 2012, Plaintiff testified that he was relying primarily on his treating family doctor to continue his medication and that he was not controlling his diabetes very well. (Tr. 32-33). He stated that until a year prior, he struggled maintaining his anger and composure, but he then changed his medications, which were helping some. (Tr. 45).

After the hearing that was held before the ALJ, Dr. Horton completed a Physical Medical Source Statement dated September 4, 2012, wherein he opined that Plaintiff had severe limitations and was incapable of even "low stress" work. (Tr. 566-569). Dr. Horton also wrote a letter dated September 6, 2012, wherein he opined that due to his multiple medical problems, his medical problems counteracting with each other and between his emotional state, impatience, physical limitations and diabetes, he felt Plaintiff was disabled and unable to work an eight hour job under any circumstances. (Tr. 565).

In his opinion, the ALJ recognized that Dr. Horton's opinion limited Plaintiff to a less than sedentary exertional level along with numerous other limitations which essentially prevented Plaintiff from engaging in regular full time competitive work or its equivalent. (Tr. 18). The ALJ recognized that Dr. Horton was a treating physician, but afforded Dr. Horton's opinion little weight "due to the fact that the evidence, including records involving Dr. Horton, fails to provide support for Dr. Horton's opinion." (Tr. 18).  The ALJ concluded that there was no evidentiary support for the extent of difficulties opined by Dr. Horton and that there was not "one piece of evidence" besides Dr. Horton's opinion of any symptoms that would prevent Plaintiff from performing light work as previously performed. (Tr. 18).  The Court agrees with the ALJ that during the relevant time period, there is no other evidence that would support the extent of limitations offered by Dr. Horton.  "A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir.2003), paraphrasing 20 C.F.R. § 404.1527(d)(2). When a treating source's opinion is not controlling, it is weighed by the same factors as any other

medical opinion: the examining relationship, the treatment relationship, supporting explanations, consistency, specialization, and other factors. See 20 C.F.R. § 404.1527(d); Lehnartz v. Barnhart, 142 Fed.Appx. 939, 940 (8th Cir. 2005). In this case, Dr. Horton's records do not reflect the extent of limitations he set forth in his medical source statement. In addition, Dr. Horton's letter stating that Plaintiff was disabled is not persuasive, and is not entitled to deference because it invades the province of the Commissioner to make the ultimate disability determination. House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination as well as the weight he afforded Dr. Horton's opinion.

**C.     Credibility Analysis**:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

Based upon the record as a whole, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### D. Hypothetical Question to VE:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing his past relevant work as a wire worker during the time period in question. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 27th day of May, 2015.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**